David A. Tilem (Bar No. 103825)
LAW OFFICES OF DAVID A. TILEM
206 N. Jackson St., Suite 201
Glendale, California 91206
Telephone:(818) 507-6000
Facsimile:(818) 507-6800

Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WOODLAND HILLS DIVISION

| | |
|---|---|
| In re:<br><br>AREI NEWHALL 10, LLC; AREI NEWHALL 3, LLC; AREI NEWHALL 4, LLC; AREI NEWHALL 5, LLC ; AREI NEWHALL 9, LLC; AREI NEWHALL 16, LLC; AREI NEWHALL 18, LLC; AREI NEWHALL 20, LLC; AREI NEWHALL 24, LLC; AREI NEWHALL 25, LLC; AREI NEWHALL 27, LLC; AREI NEWHALL 28, LLC; AREI NEWHALL 29, LLC; AREI NEWHALL 30, LLC; AREI NEWHALL 31, LLC; AREI NEWHALL 32, LLC; AND NEWHALL CAPITAL RESOURCES, LLC,<br><br>Debtors. | ) Chapter 11 Case Nos.<br>)<br>) 1:07-15156-MT, 1:07-15244-MT<br>) 1:07-15246-MT, 1:07-15211-MT<br>) 1:07-15210-MT, 1:07-15215-MT<br>) 1:07-15216-MT, 1:08-10018-MT<br>) 1:08-10013-MT, 1:08-10220-MT<br>) 1:07-15212-MT, 1:08-10062-MT<br>) 1:08-10283-MT, 1:07-15214-MT<br>) 1:08-10064-MT, 1:07-15213-MT<br>) 1:07-15200-MT<br>)<br>) [Unless Otherwise Indicated<br>) This Document Affects All Three<br>) Parcels Of Debtors' Real<br>) Property]<br>)<br>) **NOTICE OF MOTION AND MOTION FOR**<br>) **ORDER AUTHORIZING SALE OF REAL**<br>) **PROPERTY FREE AND CLEAR OF LIENS**<br>) **WITH LIEN RIGHTS TO ATTACH TO**<br>) **PROCEEDS OF SALE; POINTS AND**<br>) **AUTHORITIES; DECLARATION**<br>)<br>) Date: June 9, 2008<br>) Time: 10:00 a.m.<br>) Ctrm: 302 |

TO CREDITORS AND OTHER PARTIES IN INTEREST:

NOTICE IS HEREBY GIVEN that at the date, time and place set forth above, the Debtors identified above will move the Court for

1  an Order authorizing the sale of three parcels of real property

2  free and clear of liens pursuant to 11 U.S.C. §363(f) to Randy

3  Ziegler, et al or assigns.

4      The moving papers consist of this notice, the attached

5  Memorandum of Points and Authorities, the attached Declaration and

6  such further information as may be properly brought before the

7  Court.

8      As required by Local Bankruptcy Rule 9013-1(a)(6)(C), notice

9  is further given that Local Bankruptcy Rule 9013-1(a)(7) requires a

10  formal response at least 14 days before the hearing. If the motion

11  is being heard on shortened notice pursuant to Local Bankruptcy

12  Rule 9075-1, the notice shall specify the deadline for responses

13  set by the court in approving the shortened notice.

14  Dated: May 15, 2008

                           LAW OFFICES OF DAVID A. TILEM

15

16                         By: _____

17                             DAVID A. TILEM, Attorneys
                               for Debtors and Debtors-in-
18                             Possession

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITES

### I.

### INTRODUCTION AND BACKGROUND

The facts of this case are well known to the Court but for the benefit of other interested parties, can be summarized as follows.

Debtors are 17 of 34 limited liability companies who, together as tenants in common (or "TICs"), own three parcels of real property.[1] Each TIC owns a fractional interest ranging from 0.4571% to 30.6977%. Each TIC owns the same fractional interest in each of the three properties.

With one exception, each TIC is a limited liability company with no more than two (2) members. In various instances the members might be an individual, a husband and wife, a Trust, a probate estate, or a limited partnership. These TICs are all similarly named -- AREI Newhall XX, LLC where XX is a number between 1 and 33 which generally reflects the date on which the entity acquired its interest in the three properties. The exception to this naming convention is Newhall Capital Resources, LLC which has approximately 35 members of its own.

The Debtors together represent approximately 67% of the total equity in the three properties. In other words, the total of the fractional ownership interests in the properties held by the Debtors is approximately 67%. The non-filing TICs together own about 33% of the total equity interests in the properties.

/ / /

---

[1] The term "TICs" is used hereafter to refer to all of the tenant in common owners of the real property. The term "Debtors" is used hereafter to refer to those TICs who have filed for Chapter 11. The phrase "non-filing TICs" refers to those TICS who have NOT filed for Chapter 11 as of the date of this writing.

1    The three properties which are the subject of this motion are

2  described as:

3       8717 West Olympic Blvd., Los Angeles, California

4       8755 West Olympic Blvd., Los Angeles, California

5       24305 West Lyons Avenue, Newhall, California.

6  Each of these properties[2] is owned by the TICs subject to two

7  liens.   The more senior lien secures an obligation in favor of

8  General Electric Capital Corporation ("GECC").   GECC asserts that

9  it is presently owed more than $20,000,000.   The junior lien

10 secures an obligation in favor of Meecorp Capital Markets, LLC

11 ("Meecorp").   Meecorp asserts that it is presently owed more than

12 $4,000,000.   Both of these claim amounts are disputed, to a greater

13 or lesser extent, by the TICs.

14    The Real Property is leased by the TICs to Newhall Senior

15 Housing, LLC. ("Senior Housing") which operates a long term care

16 facility on each of the properties.

17    In connection with these Chapter 11 proceedings, Debtors wish

18 to sell the Real Property to Randy Ziegler.   Mr. Ziegler is

19 purporting to act in partnership with, and on behalf of the Merrill

20 Group which owns a large number of long term care facilities around

21 the United States.

22    The Court has set June 9, 2008 as the date for this sale to

23 occur.   The Court has previously approved Debtors' motion for

24 approval of selling procedures.   The purpose of this motion ("the

25

26    [2]    Together, the three properties are referred to as "the Real
Property".   The two properties located on Olympic Boulevard are
27 hereafter referred to as "the BH Properties" or "the Beverly Hills
Properties" due to their proximity to the City of Beverly Hills.   The
28 property in Newhall is hereafter referred to as "the Newhall
Property".

1 Sale Motion") is ask the Court to approve the proposed sale free

2 and clear of the liens of GECC and Meecorp under Section 363(f)

3 such that their liens would attach to the proceeds of sale.

4 The proposed sale on June 9, 2008 is subject to the successful

5 completion of a pending action under Section 363(h) of the

6 Bankruptcy Code for permission to sell the interests of the non-

7 filing TICs ("the Co-Tenants Action").

8 II.

9 **THE APPLICABLE LAW**

10 A.    **Section 363(b) is Applicable**

11 Property may be sold by the estate under either of two

12 theories.   If the sale is "ordinary course", the sale may occur

13 pursuant to Section 363(c) and no approval of the Court is

14 required.   Alternatively, the Court must approve any sale not in

15 the "ordinary course".

16 This is a one-time sale of nearly all assets of these estates.

17 The Debtors are NOT in the business of buying and selling real

18 property, but rather in the business of holding such property for

19 rent.   As such, the proposed sale does not appear to be in the

20 ordinary course of business and the approval of the Court is

21 required.

22 B.    **The Standard for a Section 363(b) Sale is Met in this Case**

23 The use, sale or lease of estate property under Section 363(b)

24 is a core proceeding over which the Court has jurisdiction.   See 28

25 U.S.C. 157(b)(2)(N); In re Vylene Industries, Inc., 90 F.3d 1472,

26 1475-76 (9th Cir.1996).

27 The use, sale or lease of estate property is subject to a

28 standard which assesses whether there was a valid, or sound

1   business justification.  In re Baldwin United Corporation, 43 B.R.

2   888, 905 (S.D. Ohio W.D.1984); In re Lionel Corporation, 722 F.2d

3   1063, 1066 (2d Cir.1983); In re Continental Air Lines, Inc., 780

4   F.2d 1223 (5th Cir.1986).; In re 240 North Brand Partners, Ltd. 200

5   B.R. 653, 659 (9th Cir. BAP 1996).  In addition, the Court must

6   assess whether the proposed transaction is undertaken in good

7   faith.  In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841

8   (Bankr. C.D.Cal. 1991).

9      "Good faith" encompasses fair value, and further speaks

10      to the integrity of the transaction. Typical "bad faith"

11      or misconduct, would include collusion between the seller

12      and buyer, or any attempt to take unfair advantage of

13      other potential purchasers.

14   See also In re Walter, 83 B.R. 14 17 (9th Cir. BAP 1988).

15      In this case, the Debtors seek to sell the Real Property at

16   auction and thereby avert the loss of any possible recovery of some

17   portion of their investment via foreclosure.  Debtors estimate that

18   the gross sale proceeds will exceed $30 million.  Even if GECC and

19   Meecorp are entitled to every dollar they have requested, their

20   combined claims do not exceed $25 million.  Thus Debtors believe

21   that there is at least $5 million (less costs of sale) in equity in

22   the Real Property.

23      The Court has previously made a finding, in connection with

24   GECC's relief from stay motion, that these cases were filed in good

25   faith and for a proper purpose. Seeking to invoke the right to cure

26   defaults under the Bankruptcy Code is a legitimate and proper use

27   of the Bankruptcy Code.  Platinum Capital, Inc. v. Sylmar Plaza,

28   L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1075 (9th Cir. 2002)

citing <u>CityBank v. Udhus</u> (<u>In re Udhus</u>), 218 B.R. 513, 516 (9th Cir. BAP 1998).

Debtors believe that they satisfy the standards of Section 363(b) and the sale should proceed.

C.   <u>**The Standard for a Section 363(f) Sale is Met in this Case**</u>

Section 363(f) provides that:

> (f) The [Debtors in Possession] may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

> (2) such entity consents;

> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

> (4) such interest is in bona fide dispute; or

> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Since the grounds are written in the disjunctive, any of the five grounds is sufficient to permit a free and clear sale. <u>See</u> Section 102(5). Several of these grounds apply.

1.   **THE LENDERS CONSENT**

As set forth in the attached Declaration of David A. Tilem, both lenders have expressed a desire to have the property sold so long as it is sold for a price in excess of their claims. Such is the case with a proposed sale of not less than $30 million.

2.   **THE INTERESTS ARE LIENS AND THE PRICE EXCEEDS THEM**

As set forth in the attached Declaration of David A. Tilem, the combined maximum amounts sought by GECC and Meecorp are less than the proposed selling price of $30 million.

**2.   THE LIENS ARE IN BONA FIDE DISPUTE**

Both of the liens are in bona fide dispute, albeit for different reasons.

The Court is familiar with the nature of the dispute concerning the GECC lien.  Debtors contend that they are entitled to roll back the default interest and penalties by curing the default under Section 1124 of the Plan.  GECC contends otherwise.

The dispute with Meecorp concerns whether the lien was properly authorized by the borrowers.  This dispute has yet to be aired since Debtors believe it is unnecessary to reach the issue until and unless the properties are sold.

**D.    The Lien Holders Are Entitled to Adequate Protection**

Section 363(e) provides that:

> (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

Debtors acknowledge that both lenders are entitled to adequate protection.  Debtors propose that the lien rights of both lenders transfer from the properties and attach to the proceeds of sale at close of escrow.  The liens against the proceeds will have the same priority, force and effect against the proceeds as the liens had against the Real Property.

/ / /

/ / /

/ / /

## III.

## CONCLUSION

A sale of the Real Property appears, under all of the facts of this case, to be in the best interests of all interested parties. The replacement lien on proceeds of sale adequately protects the interests of the secured creditors and the overall selling price exceeds the amount owed to the secured creditors.  The parties will then be in a position to resolve disputes over their respective rights, claims and interests in the sale proceeds.

Dated: May 15, 2008

LAW OFFICES OF DAVID A. TILEM

By: _____

DAVID A. TILEM, Attorneys for Debtors

### DECLARATION OF JAMES KOENIG

I, JAMES KOENIG, hereby declare and state as follows:

1.    I am an individual who resides in the State of California.  I make this declaration of my own personal knowledge. If called upon to do so, I could and would competently testify to the matters set forth below.

2.    I am presently employed by Asset Real Estate & Investment Company, a California corporation ("AREI") as its President.

3.    AREI was responsible for locating and originally acquiring the property in Newhall, California and the two properties near Beverly Hills, California which are the subject of this motion ("the Real Property").

4.    Debtors are 17 of 34 limited liability companies who, together as tenants in common (or "TICs"), own the Real Property. Each TIC owns a fractional interest ranging from 0.4571% to 30.6977%.  Each TIC owns the same fractional interest in each of the three properties.

5.    With one exception, each TIC is a limited liability company with no more than two (2) members.  In various instances the members might be an individual, a husband and wife, a Trust, a probate estate, or a limited partnership.

6.    These TICs are all similarly named -- AREI Newhall XX, LLC where XX is a number between 1 and 33 which generally reflects the date on which the entity acquired its interest in the three properties.  The exception to this naming convention is Newhall Capital Resources, LLC which has approximately 35 members of its own.

/ / /

7.    The Debtors together represent approximately 67% of the total equity in the Real Property.  In other words, the total of the fractional ownership interests in the Real Property held by the Debtors is approximately 67%.  The non-filing TICs together own about 33% of the total equity interests in the Real Proeprty.

8.    The three parcels which comprise the Real Property are described as:

8717 West Olympic Blvd., Los Angeles, California

8755 West Olympic Blvd., Los Angeles, California

24305 West Lyons Avenue, Newhall, California.

9.    The Real Property is owned by the TICs subject to two liens.  The more senior lien secures an obligation in favor of General Electric Capital Corporation ("GECC").  GECC asserts that it is presently owed more than $20,000,000.  The junior lien secures an obligation in favor of Meecorp Capital Markets, LLC ("Meecorp").  Meecorp asserts that it is presently owed more than $4,000,000.  Both of these claim amounts are disputed, to a greater or lesser extent, by the TICs.

10.    The Real Property is leased by the TICs to Newhall Senior Housing, LLC. ("Senior Housing") which operates a long term care facility on each of the properties.

11.    The Debtors wish to sell the Real Property to Randy Ziegler.  Mr. Ziegler has represented that he is acting on behalf of Senior Living Finance and The Merrill Group of Companies which owns a large number of long term care facilities around the United States.  A true and correct copy of the fully executed purchase and sale agreement is attached hereto as Exhibit "A".  Exhibit "A" consists of an offer and a counter offer which, together, form the

1  purchase and sale agreement.

2      12.   This is a one-time sale of nearly all assets of these

3  Debtors.   The Debtors are NOT in the business of buying and selling

4  real property, but rather in the business of holding such property

5  for rent.

6      13.   The goal is to sell the Real Property and thereby attempt

7  to recover some of the investment made by the TICs and the members

8  of Newhall Capital Resources.

9      14.   GECC and Meecorp have made demands based on their claims

10  for a combined total which is as high as $25 million.

11      I declare, under penalty of perjury under the laws of the

12  United States, that the foregoing is true and correct and that this

13  Declaration was executed on May 15ᵗʰ, 2008 at Redding, California.

14

15                                        JAMES KOENIG

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID A. TILEM

I, David A. Tilem, hereby declare and state as follows:

1.    I am an attorney at law licensed to practice and practicing before this Court.

2.    I make this Declaration of my own personal knowledge.  If asked to do so, I could and would testify to the matters below.

3.    The Court has set June 9, 2008 as the date for the sale of the Real Property to occur.  The Court has previously approved Debtors' motion for approval of selling procedures.

4.    The Court has previously made a finding, in connection with GECC's relief from stay motion, that these cases were filed in good faith and for a proper purpose.

5.    Both GECC and Meecorp have stated, in open Court, that they would like to have the Real Property sold so long as it is sold for a price in excess of their claims.

6.    Given the extensive hearings which we have conducted in this case, the Court is probably familiar with the nature of the dispute concerning the GECC lien.  Debtors contend that they are entitled to roll back default interest and penalties by curing the default under Section 1124 of the Plan.  GECC contends otherwise.

7.    The dispute with Meecorp concerns, in part, whether the lien was properly authorized by the TICs.  This dispute has yet to be aired since Debtors believe it is unnecessary to reach the issue until and unless the properties are sold.

I declare, under penalty of perjury that the foregoing is true and correct and that this Declaration was made on May ⌐5, 2008 at San Diego, California.

_____
DAVID A. TILEM

02110-AREN00-Common\M\20080514-SaleFree&ClearMotion.wpd      13

**Exhibit A**

9498547378        P.002

AIR

## STANDARD OFFER, AGREEMENT AND ESCROW
## INSTRUCTIONS FOR PURCHASE OF REAL ESTATE
### (Non-Residential)
AIR Commercial Real Estate Association

May 8, 2008
(Date for Reference Purposes)

1.  **Buyer.**

   1.1 Randy Ziegler Et Al or Assignee hereby offers to purchase the real property, hereinafter described, from the owner thereof ("Seller") (collectively, the "Parties" or individually, a "Party"), ("Buyer") through an escrow ("Escrow") to close on _____ 5 _____ days after the waiver or expiration of the Buyer's Contingencies, ("Expected Closing Date") to be held by First American Title Insurance Company ("Escrow Holder") whose address is 5 First American Way, Santa Ana, CA 92707 - Attn: Margiel Borras , Phone No. 714-250-8385 , Facsimile No. 714-242-7458 upon the terms and conditions set forth in this agreement ("Agreement"). Buyer shall have the right to assign Buyer's rights hereunder, but any such assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

   1.2 The term "Date of Agreement" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to purchase, the Property upon terms accepted by both Parties.

2.  **Property.**

   2.1 The real property ("Property") that is the subject of this offer consists of (insert a brief physical description) 1.) Oakdale Heights of Beverly Hills - 2 Bldgs at 8717 and 8755 Olympic Blvd., Los Angeles, CA; 2.) Oakdale Heights of Santa Clarita - 24705 Lyons Ave., Newhall CA is located in the City of Los Angeles & Newhall , County of Los Angeles State of California , is commonly known by the street address of see above - Three assisted living facilities as described above and is legally described as: 1.) APN 4333-011-025 and APN 4333-012-050; 2.) APN 285-014-008

   (APN _____ ).

   2.2 If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of Buyer and Title Company ("Title Company"), which shall issue the title policy hereinafter described.

   2.3 The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: electrical distribution systems (power panel, bus ducting, conduits, disconnects, lighting fixtures); telephone distribution systems (lines, jacks and connections only); space heaters; heating, ventilating, air conditioning equipment ("HVAC"); air lines; fire sprinkler system; security and fire detection systems; carpets; window coverings; wall coverings; and N/A. Furniture, fixtures and equipment to be purchased separately. The failure or inability to negotiate a purchase of the above items shall not be a condition to the sale. Buyer to contact James Koenig at (530) 226-1480 for these items (collectively, the "Improvements").

   2.4 The fire sprinkler monitor: ☐ is owned by Seller and included in the Purchase Price. ☐ is leased by Seller, and Buyer will need to negotiate a new lease with the fire monitoring company, ☐ ownership will be determined during Escrow, or ☐ there is no fire sprinkler monitor.

   2.5 Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and _____ all of which shall be removed by Seller prior to Closing.

3.  **Purchase Price.**

   3.1 The purchase price ("Purchase Price") to be paid by Buyer to Seller for the Property shall be $30,000,000.00 , payable as follows:

   (a)  $500,000.00 to be delivered to Escrow Holder within two (2) days after both parties have executed this document. With delivery of same to Escrow Holder.

   (b)  $29,500,000 to be delivered to Escrow two (2) days prior to Close of Escrow.

   Escrow shall deposit the funds at an FDIC insured financial institution in an interest bearing account whose term is appropriate and consistent with the timing requirements of the transaction. The interest shall accrue to the benefit of Buyer, who acknowledges that is may be penalties or interest for forfeiture if the applicable instrument is redeemed prior to the specified maturity. Notwithstanding the foregoing, the funds need not be deposited in an interest bearing account until and unless Buyer has provided Escrow Holder with Buyer's Federal Tax ID number.

   (a) ~~Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all-cash transaction, the Purchase Price);~~                                    $

(Strike if not applicable)   (b) ~~Amount of "New Loan" as defined in paragraph 5.1, if any;~~                        $
   (c) ~~Buyer shall take title to the Property subject to and/or assume the following existing deed(s) of trust ("Existing Deed(s) of Trust") securing the existing promissory note(s) ("Existing Note(s)");~~
   (i) ~~An Existing Note ("First Note") with an unpaid principal balance as of the Closing of approximately~~                                                                                    $

(Strike if not applicable)   ~~Said First Note is payable at $ _____ per month,
including interest at the rate of _____ % per annum until paid and/or the
entire unpaid balance is due on _____;~~



INITIALS

PAGE 1 OF 9

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION        FORM OFA-7-6/07E

9499647379    P.003

INITIAL

~~including interest in the rate of _____ % per annum until paid (enclor the entire unpaid balance is due on _____~~

~~(Strike if not applicable)    (d)    Buyer shall give Seller a deed of trust ("Purchase Money Deed of Trust") on the property, to secure the promissory note of Buyer to Seller described in paragraph 6 ("Purchase Money Note") in the amount of:~~

Total Purchase Price:                                                    $30,000,000.00

3.2  If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of certain fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.

4.    Deposits.

(a)  Should Buyer and Seller not enter into an Agreement, funds shall be promptly returned to Buyer

~~4.1 ☐ Buyer has delivered to Broker a check in the sum of $ _____ payable to Escrow Holder, to be delivered by Escrow Holder within 2 or _____ business days after both Parties have executed this Agreement, and the executed Agreement has been delivered to Escrow Holder, or ☐ within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder. Buyer shall deliver to Escrow Holder or insurance a check in the sum of $ _____ . If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement on purchase and sale, Buyer's check or funds, upon request by Buyer, be promptly returned to Buyer.~~

~~4.2    Additional deposits:~~
~~(a)  Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of _____ to be applied to the Purchase Price at the Closing.~~
~~$ _____~~
~~(b)  Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (f) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of $ _____ to be applied to the Purchase Price at the Closing.~~

~~4.3    Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 within ("the Deposit"), in a State of Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the time requirement of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is _____ . NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.~~

5.    Financing Contingency. (Strike if not applicable)
5.1  This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least _____ % of the Purchase Price, on terms reasonably acceptable to Buyer. Such loan ("New Loan") shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back financing, then Seller shall have the right to approve the terms of the New Loan, Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, or the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.

5.2  Buyer hereby agrees to diligently pursue obtaining the New Loan. If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within _____ days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or have waived this New Loan contingency.

5.3  If, after due diligence, Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less any Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.

6.    Seller Financing (Purchase Money Note). (Strike if not applicable)
6.1  If Seller approves Buyer's financials (see paragraph 6.5) the Purchase Money Note shall provide for interest on unpaid principal at the rate of _____ % per annum, with principal and interest paid as follows: _____

The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Deed of Trust(s) and/or the New Loan(s) expressly called for by this Agreement.

6.2  The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (b)):

(a)  Prepayment. Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.

(b)  Late Charge. A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.

(c)  Due On Sale. In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.

6.3  If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.

6.4  WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.

6.5  Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Seller is not satisfied with Buyer's financial condition or if Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.

7.    Real Estate Brokers.
7.1  The following real estate broker(s) ("Brokers") and brokerage relationships exist in this transaction and are consented to by the Parties (check the applicable boxes):

☑  Robin Shannon (Mission Valley Realty)                      represents Seller exclusively ("Seller's Broker");

☑  David W. Stoltz (NAI Capital, Inc.)                        represents Buyer exclusively ("Buyer's Broker"; or

☐  _____                                                   represents both Seller and Buyer ("Dual Agency").

The Parties acknowledge that Brokers are the procuring cause of this Agreement. See paragraph 24 regarding the nature of a real estate agency relationship. If the Buyer utilizes the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to this Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.

7.2  Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker or finder in

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

INITIALS

FORM OFA-7-6/07E

connection with the negotiation of this Agreement and that to one except the Brokers named herein, if any, is entitled to any compensation or finder's fee in connection with this transaction as the result of such Buyer and Seller. Broker agree each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, finder or other similar party, other than said named Brokers by reason of any dealings or act of the Indemnifying Party.

**5.    Escrow and Closing.**

5.1   Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include its standard general escrow provisions.

5.2   As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

5.3   Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

5.4   Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the "Closing") by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

5.5   Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11)

5.6   Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (n), and (o), 9.4, 9.5, 12, 13, 14, 15, 18, 20, 21, 22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

5.7   If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall be promptly refunded all funds deposited by Buyer with Escrow Holder, less only Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

5.8   The Closing shall occur within two (2) calendar weeks from the conclusion of the Court hearing at which Seller is authorized to sell the property to Buyer. If, and ONLY IF the full purchase price has been delivered to Escrow Holder within that period, Buyer may have one additional week to close escrow, in the event of any appeal from the court Order approving the proposed sale. Seller, at its sole discretion, may further extend the closing date, on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing, provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder and Brokers, in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

5.9   Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

5.10   If this sale of the Property is not consummated for any reason other than Seller's breach or default, then at Seller's request, and as a condition to any obligation to return Buyer's deposit (see paragraph 21), Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property. Provided, however, that Buyer shall not be required to deliver any such report if the written contract which Buyer entered into with the consultants who prepared such report specifically forbids the dissemination of the report to others.

**9.    Contingencies to Closing.**

9.1   The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies. IF BUYER FAILS TO NOTIFY ESCROW HOLDER, IN WRITING, OF THE DISAPPROVAL OF ANY OF SAID CONTINGENCIES WITHIN THE TIME SPECIFIED THEREIN, IT SHALL BE CONCLUSIVELY PRESUMED THAT BUYER HAS APPROVED SUCH ITEM, MATTER OR DOCUMENT. Buyer's conditional approval shall constitute disapproval, unless provision is made by the Seller within the time specified therefore by the Buyer in such conditional approval or by this Agreement, whichever is later, for the satisfaction of the condition imposed by Buyer. Escrow Holder shall promptly provide all Parties with copies of any written disapproval or conditional approval which it receives, With regard to subparagraphs (a) through (i) the pre-printed time periods shall control unless a different number of days is inserted in the spaces provided.

(a) *Disclosure.* Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR Commercial Real Estate Association ("AIR") standard form entitled "Seller's Mandatory Disclosure Statement") and provide Buyer with a completed Property Information Sheet ("Property Information Sheet") concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of said disclosures to approve or disapprove the matters disclosed.

(b) *Physical Inspection.* Buyer has 10 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property.

(c) *Hazardous Substance Conditions Report.* Buyer has 30 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a "Hazardous Substance" for purpose of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "Hazardous Substance Condition" for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d) *Soil Inspection.* Buyer has 30 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days of the Date of Agreement.

(e) *Governmental Approvals.* Buyer has 30 or _____ days from the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.

(f) *Conditions of Title.* Escrow Holder shall cause a current commitment for title insurance ("Title Commitment") concerning the Property issued by the Title Company, as well as copies of all documents referred to in the Title Commitment ("Underlying Documents"), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered as a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g) *Survey.* Buyer has 30 or _____ days from the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared by American Land Title Association ("ALTA") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easement of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h) *Existing Leases and Tenancy Statements.* Seller shall within 10 or _____ days of the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, "Existing Leases") affecting the Property, and with a tenancy statement ("Estoppel Certificate") in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails to

INITIALS

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

P. 005

9498547378

refers to provide an Estoppel Certificate then Seller shall provide Buyer with a statement...

**(i) Owner's Association.** If the Property is a condominium, ... or any other tenancy-in-common ... any owners association providing the Property. Such transfer package shall at a minimum include: copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 days from the receipt of such documents to satisfy itself with regard to the association.

**(j) Other Agreements.** Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with legible copies of all other agreements ("Other Agreements") known to Seller that will affect the Property after Closing. Buyer has 10 days from the receipt of said Other Agreements to satisfy itself with regard to such Agreements.

**(k) Financing.** If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.

**(l) Existing Notes.** If paragraph 3.1(a) has not been stricken, Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "Loan Documents") to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement (Beneficiary Statement") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 10 or _____ days from the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer, except as otherwise provided in this Agreement or approved by Buyer provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.1 hereof.

**(m) Personal Property.** In the event that any personal property is included in the Purchase Price, Buyer has 10 or _____ days from the Date of Agreement to satisfy itself with regard to the title condition of such personal property. Seller recommends that Buyer obtain a UCC-1 report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 or _____ days of the Date of Agreement.

**(n) Destruction, Damage or Loss.** There shall not have occurred prior to the Closing, a destruction of or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure. If the cost of repair or cure is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing. Buyer shall have the option, within 10 days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price. If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss. Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing.

**(o) Material Change.** Buyer shall have 10 days following receipt of written notice of a Material Change within which to satisfy itself with regard to such change. "Material Change" shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing. Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.

**(p) Seller Performance.** The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this Agreement.

**(q) Brokerage Fee.** Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers ("Brokerage Fee"). It is agreed by the Parties and Escrow Holder that Brokers are a third party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.

9.2 All of the contingencies specified in subparagraphs (a) through (m) of paragraph 9.1 are for the benefit of, and may be waived by, Buyer, and may be elsewhere herein referred to as "Buyer's Contingencies."

9.3 If any of Buyer's Contingencies or any other matter subject to Buyer's approval is disapproved as provided for herein in a timely manner ("Disapproved Item"), Seller shall have the right within 10 days following the receipt of notice of Buyer's disapproval to elect to cure such Disapproved Item prior to the Expected Closing Date ("Seller's Election"). Seller's failure to give to Buyer within such period, written notice of Seller's commitment to cure such Disapproved Item on or before the Expected Closing Date shall be conclusively presumed to be Seller's Election not to cure such Disapproved Item. If Seller elects, either by written notice or failure to give written notice, not to cure a Disapproved Item, Buyer shall have the right, within 10 days after Seller's Election to either accept title to the Property subject to such Disapproved Item, or to terminate this Agreement. Buyer's failure to notify Seller in writing of Buyer's election to accept title to the Property subject to the Disapproved Item without deduction or offset shall constitute Buyer's election to terminate this Agreement. Unless expressly provided otherwise herein, Seller's right to cure shall not apply to the remediation of Hazardous Substance Conditions or to the Financing Contingency. All contingencies, conditions, or any other matter subject to Buyer's approval must be completed, resolved or waived prior to the date on which the Court conducts the sale hearing presently June 3, 2008. Unless the Parties mutually instruct otherwise, if the time periods for the satisfaction of contingencies or for Seller's and Buyer's elections would expire on a date after the Expected Closing Date, the Expected Closing Date shall be deemed extended for 3 business days following the expiration of: (a) the applicable contingency period(s), (b) the period within which the Seller may elect to cure the Disapproved Item, or (c) if Seller elects not to cure, the applicable period within which Buyer may elect to proceed with this transaction, whichever is later.

9.4 Buyer understands and agrees that until such time as all Buyer's Contingencies have been satisfied or waived, Seller and/or its agents may solicit, entertain and/or accept back-up offers to purchase the Property.

9.5 The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the advice by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

**10. Documents Required at or Before Closing.**

10.1 Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2 Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:

(a) Grant or general warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

(b) A certified copy of an Order from the United States Bankruptcy Court for the Central District of California - Woodland Hills Division, authorizing a sale of the property free and clear of any liens, claims or interests except those approved by Buyer.

(c) If applicable, the Beneficiary Statements concerning Existing Note(s).

(d) If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.

(d-1) If applicable, Estoppel Certificates executed by Seller and/or the tenant(s) of the Property.

(e) An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.

(f) If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

(g) If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.

(h) If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.

10.3 Buyer shall deliver to Seller through Escrow:

(a) The last portion of the Purchase Price and such additional sums as are required of Buyer under this agreement, shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date.

(b) The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer...

INITIAL

INITIAL

INITIALS

PAGE 4 OF 9

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-5/07E

MAY 09 2008  18:10          NAT CAPITAL                          9498547378   P.006

~~than 2:00 P.M. on the business day prior to the Closing.~~

~~(b) If a Purchase Money Note, Deed of Trust, Purchase Money Deed of Trust or releases for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.~~

~~(c) The Assignment and Assumption of Lessee's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.~~

~~(d) Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.~~

~~(e) If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.~~

~~(f) If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.~~

10.4 At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.
**IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.**

**11. Prorations and Adjustments.**

11.1 *Taxes.* Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available. The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2 *Insurance.* **WARNING:** Any insurance which Seller may have maintained will terminate on the Closing. Buyer is advised to obtain appropriate insurance to cover the Property.

11.3 *Rentals, Interest and Expenses.* Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4 *Security Deposit.* Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5 *Post Closing Matters.* Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

~~11.6 Variations in Existing Note Balances. In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof ("Existing Note Variation"), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.~~

~~11.7 Variations in New Loan Balance. In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.~~

~~11.8 Owner's Association Fees. Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.~~

**12. Representations and Warranties of Seller and Disclaimers.**

12.1 Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and, are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a) *Authority of Seller.* Seller is the owner of the Property and has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.

(b) *Maintenance During Escrow and Equipment Condition At Closing.* Except as otherwise provided in paragraph 9.1(m) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

(c) *Hazardous Substances/Storage Tanks.* Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence of any above or below ground storage tank.

(d) *Compliance.* Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.

(e) *Changes in Agreements.* Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f) *Possessory Rights.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g) *Mechanics' Liens.* There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property.

(h) *Actions, Suits or Proceedings.* Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same for Close of Escrow.

(i) *Notice of Changes.* Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(n)) affecting the Property that becomes known to Seller prior to the Closing.

(j) *No Tenant Bankruptcy Proceedings.* Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

(k) *No Seller Bankruptcy Proceedings.* Seller is not the subject of a bankruptcy, insolvency or probate proceeding.

(l) *Personal Property.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2 Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party hereto.

12.3 In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4 Any environmental reports, soils reports, surveys, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

**13. Possession.**

Possession of the Property shall be given to Buyer at the Closing, subject to the rights of tenants under Existing Leases.

**14. Buyer's Entry.**

At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the recompaction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

**15. Further Documents and Assurances.**

The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for

INITIALS                                                                                    INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                          FORM OFA-7-8/07E

reasonably required by Escrow Holder consistent with this Agreement. The Parties agree to provide all further information and to execute and deliver all further documents, reasonably required by Escrow Holder.

16. **Attorneys' Fees.**
If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

17. **Prior Agreements/Amendments.**
17.1 This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.
17.2 Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

18. **Broker's Rights.**
18.1 If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.
18.2 Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

19. **Notices.**
19.1 Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger or by mail, postage prepaid, to the address set forth in this Agreement or by facsimile transmission.
19.2 Service of any such communication shall be deemed made on the date of actual receipt if personally delivered. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. Communications transmitted by facsimile transmission shall be deemed delivered upon telephonic confirmation of receipt (confirmation report from fax machine is sufficient), provided a copy is also delivered via delivery or mail. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.
19.3 Any Party or Broker herein may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

20. **Duration of Offer.**
20.1 If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of

_____ on the date of June 9, 2008 _____

it shall be deemed automatically revoked.

20.2 The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

21. LIQUIDATED DAMAGES. (This Liquidated Damages paragraph is applicable only if initialed by both Parties).
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF _____ UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.



_____ Buyer Initials _____ Seller Initials

22. ARBITRATION OF DISPUTES. (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)
22.1 ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO THE LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF DEPOSIT MONEY, SHALL BE DETERMINED BY BINDING ARBITRATION BY, AND UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("COMMERCIAL RULES"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. ANY SUCH CONTROVERSY SHALL BE ARBITRATED BY 3 ARBITRATORS WHO SHALL BE IMPARTIAL REAL ESTATE BROKERS WITH AT LEAST 5 YEARS OF FULL TIME EXPERIENCE IN BOTH THE AREA WHERE THE PROPERTY IS LOCATED AND THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT. THEY SHALL BE APPOINTED UNDER THE COMMERCIAL RULES. THE ARBITRATORS SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING. PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE AWARD SHALL BE RENDERED BY AT LEAST 2 OF THE 3 ARBITRATORS, BE RENDERED WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, AND MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 16 HEREOF. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.
22.2 BUYER'S RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.
22.3 NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

ANY DISPUTES OR CONTROVERSIES ARISING OUT OF THIS AGREEMENT SHALL BE SUBMITTED TO, AND RESOLVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA APPLYING FEDERAL OR CALIFORNIA LAW AS MAY BE APPLICABLE.

_____ INITIALS

PAGE 6 OF 9

_____ INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION
FORM OFA-7-8/07E

_____          _____
Buyer Initials            Seller Initials

**23.  Miscellaneous.**

23.1  **Binding Effect.**  This Agreement shall be binding on the Parties, without regard to whether or not paragraphs 21 and 22 are initialed by both the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed.

23.2  **Applicable Law.**  This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located.

23.3  **Time of Essence.**  Time is of the essence of this Agreement.

23.4  **Counterparts.**  This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.

23.5  **Waiver of Jury Trial.**  THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.

23.6  **Conflict.**  Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.

23.7  **1031 Exchange.**  Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange.

23.8  **Days.**  Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

**24.  Disclosures Regarding The Nature of a Real Estate Agency Relationship.**

24.1  The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.

24.2  When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:

(a)  **Seller's Agent.**  A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) To the Seller. A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) To the Buyer and the Seller. a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(b)  **Buyer's Agent.**  A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) To the Buyer: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) To the Buyer and the Seller: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(c)  **Agent Representing Both Seller and Buyer.**  A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer. a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not without the express permission of the respective Party, disclose to the other Party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

(d)  **Further Disclosures.**  Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in the transaction and that disclosure. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

24.3  **Confidential Information:**  Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

**25.  Construction of Agreement.**  In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

**26  Additional Provisions:**

Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum consisting of paragraphs

_____ through _____ . (If there are no additional provisions write "NONE".)

(b)  Buyer is advised that seller consists of 34 limited liability companies (Owners), each of whom owns a fractional interest in each of the three properties to be sold under this agreement. All of these interests, which together comprise a 100% fee simple interest, are being sold pursuant to this Agreement.

(c)  This is a sale of land and buildings only. It is not a sale of, nor does it include, any personal property which may be located on, in or about the properties. Seller does not own such personal property and cannot sell the same.

(d)  This is not a sale of the businesses which are presently being operated on the properties. Seller does not own or operate these businesses and cannot sell the same. Seller makes no representations or warranties regarding the businesses, the condition of the businesses, the operation of the businesses or the financial condition or suitability of the businesses.

(e)  Buyer is acquiring property presently being used to operate three long term care facilities. Such facilities require special licensing. This sale does not include any such licensing, hence if Buyer intends to continue operating the businesses, Buyer is responsible for obtaining its own appropriate licenses or securing the services of a licensed operator to manage and operate the facilities.



PAGE 7 OF 9

_____
INITIALS

_____
INITIALS

(d) Buyer is advised that this sale is conditional upon, and subject to approval of the United States Bankruptcy Court for the Central District of California in pending Chapter 11 proceedings for 17 of the 54 Owners all being jointly administered under case number 1:07-15156-MT.

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

1.    SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.
2.    RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER'S INTENDED USE.

WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

NOTE:
1.    THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.
2.    IF THE BUYER IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

INITIALS                                    PAGE 8 OF 9

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

BROKER:
NAI Capital, Inc.
David W. Stolte

Attn:
Title:
Address: 4650 Von Karman Avenue
Newport Beach, CA  92660
Telephone:(949) 854-6600
Facsimile:(949) 854-7378
Email:davestolte@naicapital.com
Federal ID No.

BUYER:
Randy Ziegler Et Al or Assignee

By:
Date:
Name Printed:
Title:
Telephone:(   )
Facsimile:(   )

By:
Date:
Name Printed:
Title:
Address:

Telephone:(   )
Facsimile:(   )
Email:
Federal ID No.

**27. Acceptance.**

27.1  Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions therein specified.

27.2  Seller acknowledges that Brokers have been retained to locate a Buyer and are the procuring cause of the purchase and sale of the Property set forth in this Agreement. In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum equal to 3.0 % of the Purchase Price to be divided equally between Seller's Broker and Buyer's Broker. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.

27.3  Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.

BROKER:

Mission Valley Realty & Loan, Inc.

Attn: Robin Shannon
Title:
Address: 7676 Hazard Center #500
San Diego, CA  92108
Telephone:(858) 204-0052
Facsimile:(619) 923-2952
Email:
Federal ID No.: 00794740 DRE Lic.

SELLER:

Newhall Capital Resources

By:
Date:
Name Printed: James Koenig
Title:
Telephone:(   )
Facsimile:(   )

By:
Date:
Name Printed:
Title:
Address: 250 Hemstead Street, #200
Redding, CA  96002
Telephone:(530) 226-1480
Facsimile:(530) 226-1484
Email:
Federal ID No.: 20-3503748

NOTICE: These forms are often modified to meet changing requirements of law and industry needs. Always write or call to make sure you are utilizing the most current form: AIR Commercial Real Estate Association, 800 W 6th Street, Suite 800, Los Angeles, CA 90017. Telephone No. (213) 687-8777. Fax No.: (213) 687-8616.

© Copyright 2003 By AIR Commercial Real Estate Association.
All rights reserved.
No part of these works may be reproduced in any form without permission in writing.

PAGE 9 OF 9

INITIALS

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

FROM Case 1:07-bk-15156-MT   Doc 92   Filed 05/15/08   Entered 05/15/08 13:39:29   Desc
Main Document   Page 24 of 36   Nov. 13 2005 08:41PM  P1

MAY-12-2008  14:03        NAI CAPITAL                      9498547378      P.002

## COUNTER-OFFER AND ADDENDUM TO
## STANDARD OFFER, AGREEMENT AND ESCROW
## INSTRUCTIONS FOR PURCHASE OF REAL
## ESTATE DATED MAY 8, 2008

Buyer:       Randy Ziegler, et. al. or assignees

Dated:       May 8, 2008

Property: 24305 Lyons Avenue, Newhall, California
          8717 Olympic Blvd., Los Angeles, California
          8755 Olympic Blvd., Los Angeles, California

Dear Mr. Ziegler:

    Thank you for your Offer referenced above. This is a Counter
Offer. It incorporates by this reference all of the terms and
conditions of your Offer subject to the following modifications. The
paragraph numbers used in this Counter Offer are those used in the
Offer.

    You may accept this Counter Offer by adding your signature to
the bottom. There is no need to re-write your Offer.


    1.1  Notwithstanding anything contained in the Offer to the
contrary, escrow must close no later than two calendar weeks after
June 9, 2008 unless:

        (a)  the Bankruptcy Court extends the date;

        (b)  if, and ONLY IF the full purchase price has been
    deposited into escrow within the permitted two week period or
    within such additional time as the Bankruptcy Court may approve
    pursuant to 1.1(a), then Seller may extend the date to close
    escrow by a period of one additional calendar week; or

        c)  If there is an appeal from the Order of the Bankruptcy
    Court approving the proposed sale, Sellers, at their sole
    election, may further extend the closing date.

Time is of the essence with respect to this provision.


    2.5  The purchase price does not include, and Seller does not



FROM : Case 1:07-bk-15156-MT    Doc 92    Filed 05/15/08    Entered 05/15/08 13:39:29    Desc
                              Main Document    Page 25 of 36   Nov. 13 2005 08:42PM P2

MAY-12-2008  14:03              NAI CAPITAL                        9498547378      P.003

own and cannot sell any business conducted on the real property, any
personal property located on or about the real property, or any
licenses or intangibles associated with the business conducted on the
real property.

3.1  Notwithstanding anything to the contrary contained in the
Offer, the total purchase price ( Purchase Price ) to be paid by
Buyer to Seller for the Property shall be $30,000,000, payable as
follows:

(a)  $500,000        to be delivered to Escrow Holder within two
                     (2) business days after both parties have
                     executed this Agreement and the executed
                     Agreement has been delivered to Escrow
                     Holder

(b)  $6,500,000      to be delivered to ~~Seller s counsel~~ ESCROW HOLDER no
                     later than twenty-one (21) days after Buyer
                     receives all documents specified in
                     paragraph 9 provided that Buyer has not
                     cancelled this sale within the time
                     permitted and in the manner specified by
                     paragraph 9

(c)  $23,000,000     to be delivered to Escrow Holder two (2)
                     business days prior to close of escrow

* ~~Seller s counsel~~ Escrow Holder shall deposit the funds at an FDIC insured
financial institution in an interest bearing account whose term is
appropriate and consistent with the timing requirements of this
transaction.  The interest therefrom shall accrue to the benefit of
Buyer, who hereby acknowledges that there may be penalties or
interest forfeitures if the applicable instrument is redeemed prior
to its specified maturity.  Notwithstanding the foregoing, the funds
need not be deposited in an interest bearing account until and unless
Buyer has provided Seller s counsel with Buyer s federal tax
identification number. That number is _____

3.2  Strike in its entirety.

4.1  Notwithstanding anything to the contrary contained in the
Offer, delivery of the additional deposit of $6,500,000 as set forth
in this Agreement shall be deemed a waiver of all further
contingencies by Buyer.  Should Buyer fail to deliver the additional
deposit of $6,500,000 as set forth in this Agreement, Seller may, at
Seller s sole election, either extend the period of time for making

FROM : Case 1:07-bk-15156-MT    Doc 92    Filed 05/15/08    Entered 05/15/08 13:39:29    Desc
Main Document          Page 26 of 36    Nov. 13 2005 08:42PM P3

MAY-12-2008  14:04              NAI CAPITAL                          9498547378      P.004

the additional deposit of $6,500,000 or unilaterally terminate this transaction by giving written notice of such election to Escrow Holder. Should Seller elect to terminate this transaction, neither Party shall have any further liability to the other under this Agreement and Seller s initial deposit of $500,000 shall, upon request by Buyer, be promptly returned to Buyer.

5.1   Strike in its entirety.

5.2   Strike in its entirety.

5.3   Strike in its entirety.

6.1   Strike in its entirety.

6.2   Strike in its entirety.

6.3   Strike in its entirety.

6.4   Strike in its entirety.

6.5   Strike in its entirety.

8.8   Strike in its entirety.

9.1(c)  Notwithstanding anything to the contrary contained in the Offer, Buyer shall have a period of 20 days to disapprove this contingency.

9.1(d)  Notwithstanding anything to the contrary contained in the Offer, Buyer shall have a period of 20 days to disapprove this contingency.

9.1(e)  Notwithstanding anything to the contrary contained in the Offer, Buyer shall have a period of 20 days to disapprove this contingency.

9.1(g)  Notwithstanding anything to the contrary contained in the Offer, Buyer shall have a period of 20 days to disapprove this contingency.

10.3(a)  Notwithstanding anything to the contrary contained in the Offer, the cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement, except the sum of $500,000 which has previously been delivered to Escrow Holder and the sum of $6,500,000 which has previously been delivered to Seller s counsel, shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date.

12.1(h)  Replace the word  for  with the word  after .

12.1(k)  Strike in its entirety.

12.1(l)  Strike in its entirety.

21    Insert as Paragraph 21 the following:

LIQUIDATED DAMAGES.  THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT.  THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES.

IN THE EVENT OF BUYER S BREACH, SELLER SHALL HOLD BUYER S DEPOSIT CONSISTING OF THE $500,000 DELIVERED BY BUYER TO ESCROW AND $6,500,000 DELIVERED BY BUYER TO SELLER S COUNSEL (A TOTAL OF $7,000,000) FOR A PERIOD NOT TO EXCEED NINETY-ONE (91) DAYS.  DURING THAT PERIOD OF TIME, SELLER SHALL USE ITS BEST EFFORTS TO SELL THE PROPERTY TO ANOTHER BUYER.  IF SELLER SUCCESSFULLY SELLS THE PROPERTY TO ANOTHER BUYER (AND CLOSES ESCROW) DURING THAT PERIOD, THE AMOUNT OF THE LIQUIDATED DAMAGES SHALL BE THE SUM OF $100,000 PLUS AN AMOUNT WHICH IS THE DIFFERENCE BETWEEN BUYER S PRICE AND THE AMOUNT RECEIVED BY SELLER FROM THE SUBSEQUENT SALE. BY WAY OF EXAMPLE ONLY, IF THE SUBSEQUENT SALE IS AT A HIGHER PRICE, THEN THE AMOUNT OF THE LIQUIDATED DAMAGES WILL BE $100,000 + 0 DIFFERENTIAL.  BY WAY OF FURTHER EXAMPLE ONLY, IF THE SUBSEQUENT SALE IS AT A LOWER PRICE BY



FROM :  Case 1:07-bk-15156-MT    Doc 92    Filed 05/15/08    Entered 05/15/08 13:39:29    Desc
FAX NO.          Main Document       Page 28 of 36    Nov. 13 2005 08:43PM P5

MAY-12-2008  14:04          NAI CAPITAL                          9498647878        P.006

the additional deposit of $6,500,000 or unilaterally terminate this transaction by giving written notice of such election to Escrow Holder. Should Seller elect to terminate this transaction, neither Party shall have any further liability to the other under this Agreement and Seller s initial deposit of $500,000 shall, upon request by Buyer, be promptly returned to Buyer.

5.1  Strike in its entirety.

5.2  Strike in its entirety.

5.3  Strike in its entirety.

6.1  Strike in its entirety.

6.2  Strike in its entirety.

6.3  Strike in its entirety.

6.4  Strike in its entirety.

6.5  Strike in its entirety.

8.8  Strike in its entirety.

9.1(c)  Notwithstanding anything to the contrary contained in the Offer, Buyer shall have a period of 20 days to disapprove this contingency.

9.1(d)  Notwithstanding anything to the contrary contained in the Offer, Buyer shall have a period of 20 days to disapprove this contingency.

9.1(e)  Notwithstanding anything to the contrary contained in the Offer, Buyer shall have a period of 20 days to disapprove this contingency.

$250,000, THEN THE LIQUIDATED DAMAGES WILL BE $100,000 + $250,000 DIFFERENTIAL.  IF SELLER IS UNABLE TO SELL THE PROPERTY TO ANOTHER BUYER DURING THAT PERIOD OF TIME, THE AMOUNT OF THE LIQUIDATED DAMAGES SHALL BE THE SUM OF $7,000,000.

UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FROM :                                                                    Nov. 13 2005 08:43PM  P7

MAY-12-2008  14:05          NAI CAPITAL                          9498547378      P.008

26(g)    Replace the case number with: 1:07-15156-MT.

This counter-offer is approved and Brokers are authorized to deliver a signed copy to Buyer.

**SELLER:**

Newhall Capital Resources, LLC
f/b/o itself and 33 co-owners

By: _____
    James Koenig

Date: May 9th, 2008
Title: Managing Member
Address: 250 Hemsted St., #200
         Redding, CA 96002
Phone: 530-226-1480
Fax: 530-226-1484
Tax ID No. 20-3503748

**BROKER:**

Mission Valley Realty & Loan, Inc.

By: _____
    Robin Shannon

Date: May 9, 2008
Title: Agent
Address: 7676 Hazard Center, #500
         San Diego, CA 92108
Phone: 858-204-0052
Fax: 619-923-2952
DRE Lic No.: 00794741

**Acceptance.**

27.1 Buyer accepts the foregoing counter-offer to purchase the Property and hereby agrees to buy the Property on the terms and conditions set forth above.

27.2 Buyer acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Seller.

**BUYER:**

Randy Ziegler (Merrill Group of Companies) and/or assignees

By: _____
    Randy Ziegler

Date: May 13 2008
Title: Buyer
Address: 4650 Von Karman Ave.,
         Newport Beach, CA 92660
Phone: 714-614-0004
Fax: email: RANDY@AUBHD.COM
Tax ID No. THROUGH ESCROW

**BROKER:**

NAI Capital, Inc.

By: _____
    David Stolte  V.P. SENIOR LIVING

Date: May 13 2008
Title: V.P. SENIOR LIVING
Address: 4650 Von Karman Ave.,
         Newport Beach, CA 92660
Phone: 949-854-6600
Fax: 949-854-7378
Tax ID No.: 95-3454626

TOTAL P.008

1

## PROOF OF SERVICE

2

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

5

    I am employed in the County of Los Angeles, State of
California.  I am over the age of 18 and not a party to the within
action; my business address is 206 N. Jackson St., Suite 201,
Glendale, California 91206.

6

    On May 15, 2008 I served the foregoing document described as:

7

**NOTICE OF MOTION AND MOTION FOR ORDER FIXING PROCEDURES RE
SALE OF REAL PROPERTY; POINTS AND AUTHORITIES**

8

9

on the interested parties in this action by placing a true copy
thereof addressed as follows:

10

                    SEE ATTACHED SERVICE LIST

11

12

[X] **(BY MAIL)** I caused such envelope with postage thereon fully
    prepaid to be placed in the United States Mail at Glendale,
    California.

13

14

[ ] **(BY PERSONAL SERVICE)** I caused such envelope to be delivered
    by hand to the office or residence of the addressee as shown
    as shown above.

15

16

17

[ ] **(BY FACSIMILE TRANSMISSION)** I caused such document to be sent
    by automatic facsimile transmission to the following telephone
    numbers:( see attached list) and confirmation that the
    transmission was received.

[ ] **(BY NEXT DAY DELIVERY SERVICE]** I caused such document to be
    transmitted by next day deliver service to the office or
    residence of the addressee as shown above.

18

19

20

    Executed on May 15, 2008, at Glendale, California.

21

22

[ ] **(State)**  I declare that under penalty of perjury under the
    laws of the State of California that the above is true and
    correct.

23

24

[x] **(Federal)** I declare that I am employed in the office of a
    member of the bar of this court at whose direction the service
    was made.

25

26

Lorena Aguirre

27

28

1

## Service List

2

3 Brian Fittipaldi, Attorney
Office of United States Trustee
128 E. Carrillo Street, #126
4 Santa Barbara CA, 93101

5

United States Trustee
6 21051 Warner Center Lane, Suite
115
7 Woodland Hills, CA 91367

8 **Special Notice**
Randy Rogers
9 Winston & Strawn
101 California St #3900
10 San Francisco, CA 94111

11 David Richardson
Winston & Strawn
12 333 S Grand Ave., #3800
Los Angeles, CA 90071-1543

13

Aron Oliner
14 Duane Morris, LLP
One Market Plaza
15 Spear Street Tower, Suite 2000
San Francisco, CA 94105

16

Sandford Frey
17 Creim Macias Koenig & Frey, LLP
633 W. Fifth St., #5100
18 Los Angeles, CA 90071

19 AREI Newhall 3, LLC
The Lawrence & Nancy Cauble
20 Family Trust Dtd 8/5/03
8631 Fenwick Way
21 Dublin, CA 94568

22

AREI Newhall 4, LLC
23 Paul E. and Virginia Ann Blake
1544 Croston Drive
24 Plano, TX 75075

25

AREI Newhall 5, LLC
26 Erwin C. Si and Irene C. Go
146 Gainsborough Court
27 Alameda, CA 94502

28

AREI Newhall 9, LLC
Ernest Silva Rodriguez
5 Ike Court
Novato, CA 94945

AREI Newhall 10, LLC
The Hobbs Family Trust Dtd
5/3/05 FBO Ann M. Hobbs
2272 East Richmond Avenue
Fresno, CA 93720

AREI Newhall 16, LLC
The RJD Family Trust
8328 South Roosevelt St.
Midvale, UT 84047

AREI Newhall 18, LLC
Yort Jue and Rosalina L. Jue
Revocable Trust dtd 7/9/96
2166 14th Avenue
San Francisco, CA 94116

AREI Newhall 20, LLC
Jane Yang
2131 19th Avenue #202
San Francisco, CA 94116

AREI Newhall 24, LLC
McClintock Properties, L.P.
336 Bon Air Ctr., #393
Greenbrae, CA 94904

AREI Newhall 25, LLC
Dennis and Judy Burns
143 Buena Vista Avenue
Corte Madera, CA 94925

AREI Newhall 27, LLC
David L. Miller and Devonna J.
Miller Living Trust dated
9/12/02
251 Futurity Lane
Fallbrook, CA 92028

```
 1   AREI Newhall 28, LLC            AREI Newhall 7, LLC
     Patricia M. McPherson           Wanda Toy Ng Kwong
 2   332 La Crosse Avenue            157 Sable Point
     Santa Rosa, CA   95409          Alameda, CA   94502
 3

 4   AREI Newhall 29, LLC            AREI Newhall 8, LLC
     Anthony F. and Erin A. Gabaldon Donald R. Bausler
 5   2304 241st Street               700 Mission Canyon Road
     Lomita, CA   90717              Santa Barbara, CA   93105
 6

 7   AREI Newhall 30, LLC            AREI Newhall 11, LLC
     David J. and Christine M. Glass The Ambrosio Living Trust dated
 8   2808 Park Oak Drive             June 30, 1980
     Lodi, CA   95242                753 Webster Street
 9                                   Palo Alto, CA   94301

10   AREI Newhall 31, LLC
     Maurice Patrick and Barbara Lee
11   Clay                            AREI Newhall 12, LLC
     22 Elan Way                     John M. Klett
12   Napa, CA   94559                35 University Drive
                                     Setauket, NY   11733
13

14   AREI Newhall 32, LLC            AREI Newhall 13, LLC
     The Edward Lee Trust Dated      Kendall P. Klett
15   12/19/05                        35 University Drive
     140 Red River Way               Setauket, NY   11733
16   San Jose, CA   95136

17                                   AREI Newhall 14, LLC
                                     Ernest B. Boyd
18   Newhall Capital Resources, LLC  19 Yorkshire Drive
     250 Hemsted Drive, Ste. 200     Wheatly Heights, NY   11798
19   Redding, CA 96002

20                                   AREI Newhall 15, LLC
                                     Agnes E. Boyd
21   AREI Newhall 1, LLC             19 Yorkshire Drive
     Ruth W. Stevens                 Wheatly Heights, NY   11798
22   11320 Carriage Road
     Providence Forge, VA   23140
23                                   AREI Newhall 17, LLC
                                     Umberto and Pierrette Torlone
24   AREI Newhall 2, LLC             6637 24th Street
     John   L. and Joan A. Peacock   Rio Linda, CA   95673
25   37795 Jasmine Ct.
     Fremont, CA   94536
26                                   AREI Newhall 19, LLC
                                     Frank Aragona
27   AREI Newhall 6, LLC             47 Bieselin Road
     James V. and Carol A. Emery     Bellport, NY   11713
28   3907 Arrowwood Court
     Pleasanton, CA   94588
```

```
 1   AREI Newhall 21, LLC                    Lowenstein Sandler PC
     The John F. Pardella and Carole         Attn: William P. Munday
 2   M. Pardella Revocable Trust             65 Livingston Avenue
     Dated 11/12/96                          Roseland, NJ 07068
 3   2013 Tyler Way
     Lodi, CA  95242
 4
                                             Meecorp Captial Markets
 5   AREI Newhall 22, LLC                    2115 Linwood Avenue #301
     Thomas L. and Starlene Caldwell         Fortlee, NJ 07024
 6   2450 Goodwin Avenue
     Penn Grove, CA  94951
 7                                           Brad Holte
                                             6116 Lone Pine Road
 8                                           Sebastopol, CA 95474

 9   AREI Newhall 23, LLC
     Nowacki Family Trust UTD                Carolyn Doelling
10   5/25/02                                 6445 Bevenue Avenue
     3734 Skyfarm Drive                      Oakland, CA 94618
11   Santa Rosa, CA  95403

12                                           David Hancock
     AREI Newhall 26, LLC                    3 Hickory Avenue
13   Dunlap Exempt Trust                     Corte Madera, CA 94925
     100 South Street #320
14   Sausalito, CA  94965
                                             David Peugh
15                                           8278 Peninsular Drive
                                             Kelseyville, CA 95451
16   AREI Newhall 33, LLC
     Narasimharao  L. and Sambrajya
17   L. Palagummi                            Doris Maneke
     2610 Wyman Court                        304 Gate Way
18   Tracy, CA  95377                        Santa Rosa, CA 95401

19
     Department Of Social Services           Eugene & Charlene Krautheim
20   Community Care Licensing                530 Seavy Lane
     21731 Ventura Blvd. #250                Petamula, CA 94952
21   Wooodland Hills, CA 91364

22                                           Florence & James Haedt
     Franchise Tax Board                     6201 Harwood Ave
23   Attn: Bankruptcy                        Oakland, CA 94618
     P.O. Box 2952
24   Sacramento, CA 95812-2952
                                             Gretchen Miller
25                                           8023 Fallview Way
                                             El Dorado, CA 95762
26   Los Angeles County Tax
     Collector
27   225 North Hill Street                   George & Rosemary Coleman
     Los Angeles, CA 90012                   585 El Dorado Drive
28                                           Sonoma, CA 95476
```

| | | |
|---|---|---|
| 1 | Heidi & Robert Korhummel<br>1081 Codiroli Street | Maria Peterson<br>5104 Garaventa Drive |
| 2 | Livermore, CA 94550 | Cocord, CA 94521 |
| 3 | | |
| 4 | Jane Thompson<br>54 Schooner Hill | Mary Ann Lee<br>487 Bell Avenue |
| 5 | Oakland, CA 94618 | Livermore, CA 94550 |
| 6 | Jeanine Jacobs<br>117 Sycamore Avenue | |
| 7 | Larkspur, CA 94939 | Mary Wheeler<br>26 McNear Drive<br>San Rafael, CA 94904 |
| 8 | | |
| 9 | John & Ann Thomas<br>238 Bayview Street | Nancy McClenahan<br>4430 Otis Court |
| 10 | San Rafael, CA 94901 | Carmichael, CA 95608 |
| 11 | | |
| 12 | Karen Nencini<br>1089 South Fitch Mountain Road<br>Healdsburg, CA 95448 | Ray & Jill L'Esperance<br>1114 Euclid Avenue<br>Berkeley, CA 94708 |
| 13 | | |
| 14 | Kathleen Adams<br>815 Alexander Valley Road | Rebecca Lonergan<br>16000 Redwood Lodge Road |
| 15 | Healdsburg, CA 95448 | Los Gatos, CA 95033 |
| 16 | | Richard & Hope Samaras |
| 17 | Kay Kerriden<br>332 Park Place Drive | 4205 Canyon Crest Road West<br>San Ramon, CA 94583 |
| 18 | Petaluma, CA 94954 | |
| 19 | | Robert & Barbara Towle |
| 20 | Linda Beeson<br>6353 Lone Pine Road | 3460 Sierra Road<br>San Jose, CA 95132 |
| 21 | Sebastopol, CA 95472 | |
| 22 | Linda Zanko | Roxanne Jones<br>P.O. Box 1029 |
| 23 | 660 Arthur Street<br>Novato, CA 94947 | Santa Rosa, CA 95402 |
| 24 | | Sharon Waite |
| 25 | Lorraine Lender<br>14 Elena Court | 4536 South East 34th Avenue<br>Portland, OR 97202 |
| 26 | Novato, CA 94945 | |
| 27 | Louise & Thomas Burns | Sheila & Craig Allen<br>27 Stetson Ave |
| 28 | 59 Menlo Place<br>Berkeley, CA 94707 | Kentfield, CA 94904 |

1  Sue Poinsett
   231 Roundtree Way
2  San Rafael, CA 94903

3
   Theodore & Elizabeth Gehrke
4  18242 Zella Court
   Los Gatos, CA 95033
5

6  Thomas Aldinger
   1202 West K Street
7  Benicia, CA 94510

8  Thomas Kearney
   4 Los Cerros Drive
9  Greenbrae, CA 94904

10

11 William & Margery Jamison
   4838 State Court
12 Richmond, CA 94804

13
   William Mancuso Jr.
14 19438 Cassel Fall River Rd.
   Cassel, CA 96016
15

16

17

18

19

20                        .

21

22

23

24

25

26

27

28